**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

LANAI M. SINGLETON,

Plaintiff,

v.

WARDEN TYRELL WILSON, SR., and
OFFICER OKORO,

Defendants.

Civil Action No.: JRR-25-1512

## MEMORANDUM OPINION

In response to the above-entitled civil rights complaint, Defendants Warden Tyrell Wilson, Sr., and Officer Okoro filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. ECF No. 16. Although he was advised of his right to do so and of the consequences of failing to do so, Plaintiff Lanai M. Singleton has not filed an opposition to the motion. No hearing is necessary. *See* D. Md. Local R. 105.6 (2025). For the reasons that follow, Defendants' Motion, construed as one seeking summary judgment, shall be granted.

## I. BACKGROUND

Singleton, an inmate confined to the Maryland Division of Correction, states that while he was incarcerated at the Maryland Reception Diagnostic Classification Center ("MRDCC") from August 1 – 24, 2024, on Unit 7C, he was stabbed in the back and neck by another inmate. ECF No. 5 at 4. He claims that "nobody did [their] job to protect me or stop what happen[ed] to me." *Id*. Instead, Singleton alleges, the first officer on the scene sprayed him with mace even though he was not the aggressor. *Id*.

Despite the fact that he was only trying to fend off an attack, Singleton claims he was given an infraction and "placed on lock up for a few days." ECF No. 5 at 5. He states that he blames

"all parties" for what happened to him because he could have been killed if he was not "fast on [his] feet." *Id.* In Singleton's view, had the officers on duty done their jobs properly, he would not have been assaulted. *Id.* As relief for his failure to protect claim, Singleton seeks one million dollars in compensation from each defendant.

In a supplemental complaint, Singleton states that he was stabbed on July 14, 2024, because his assailant, another inmate, said that Singleton used the microwave before him. ECF No. 9 at 4. He alleges that Officer Okoro failed to protect him from getting stabbed and instead "ran down on [him] and assaulted [him]" by spraying him with mace. *Id.* He further explains that the infraction he received was dismissed after the hearing officer understood that Singleton had been stabbed. *Id.* at 5. He adds that he is still in need of medical treatment due to lingering pain from the injuries he sustained. *Id.*

Defendants add that Singleton was a pretrial detainee at the time of the incident. They explain that the Division of Pretrial Detention and Services ("DPDS") "maintains and operates MRDCC, among other facilities." ECF No. 16-4 at 1, ¶ 2. "The Resident Grievance Office ('RGO') is a subunit of DPDS which reports to the Director of Standards, Compliance and Litigation." *Id.* at ¶ 1. The DPDS has an grievance procedure in place, which was instituted on August 30, 1991, and provides the following four-step process: (1) a resident complaint form is filed within 15 calendar days of the incident giving rise to the grievance and the RGO provides a response within 20 days; (2) a motion for grievance committee may be filed by the detainee; (3) the detainee may file a motion to appeal to the warden within three working days of the decision rendered in step two; and (4) the detainee may file a motion for appeal to the Assistant Commissioner within three working days of receipt of the decision rendered in step three. *Id.* at

1-2, ¶ 4, *see also* ECF No. 16-4 at 5-14. Detainees are informed of this process when they are given a copy of the Detainee/Inmate Handbook. *Id*. at 2, ¶ 5.

A search of the DPDS RGO records for grievances filed by Singleton while he was a detainee at MRDCC revealed that he filed three resident complaint forms that pre-date the July 14, 2024, incident. ECF No. 16-4 at 2, ¶ 8, *see also* ECF No. 16-4 at 16-23 (attachments B, C, and D). Singleton never utilized the DPDS grievance procedure to exhaust administrative remedies regarding this incident. *Id*.

Singleton was transferred to Eastern Correctional Institution ("ECI") on August 22, 2024. ECF No. 16-3 at 1, ¶ 3. A check of the database for Administrative Remedy Procedure complaints ("ARP") filed by Singleton raising allegations against any officer on July 14, 2024, at MRDCC revealed that he has never filed such a complaint. *Id*. at 2, ¶ 6. Rather, Singleton filed an ARP on May 8, 2025, requesting medical care for pain because he had been stabbed while he was confined at MRDCC, but did not address his claim against any officers. *Id*. at 4. The ARP was dismissed with instructions to resubmit it with additional information and a signature. *Id*.

## II. STANDARD OF REVIEW

**Federal Rule 12(b)(6)**

A motion asserted under Rule 12(b)(6) "test[s] the sufficiency of a complaint;" it does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Therefore, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain

that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted). "[A] complaint that provides no more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. 8:21-CV-01637-PX, 2021 WL 5326463, at *2 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

**Federal Rule 56**

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists

on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id*. at 249.

Courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). If the moving party demonstrates "an absence of evidence to support the nonmoving party's case," the burden shifts to the nonmoving party to "present specific facts showing that there is a genuine issue for trial." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015). "To create a genuine issue for trial, 'the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence.'" *Id.* (quoting *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). "In other words, a factual dispute is genuine only where 'the non-movant's version is supported by sufficient evidence to permit a reasonable jury to find' in its favor." *Id.* (quoting *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 175 (4th Cir. 1988)).

In undertaking this inquiry, the Court considers the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage).

While self-represented pleadings and papers are liberally construed, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the Court maintains an "affirmative obligation . . . to prevent factually

unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt,* 999 F.2d at 778-79, and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Exhibits to the Motion & Conversion of the Motion to One for Summary Judgment**

Defendants attach exhibits in support of their Motion. When deciding a motion to dismiss under Rule 12(b)(6), a court typically considers only the complaint and any attached documents. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat a motion as a motion for summary judgment where matters outside the pleadings are not excluded from consideration in a court's resolution of the motion (*i.e.,* where the court considers exhibits to the motion). FED. R. CIV. P. 12(d).

Importantly, "[t]here are two requirements for a proper Rule 12(d) conversion." *Greater Balt. Ctr. for Pregnancy Concerns. Inc. v. Mayor and City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013). "First, all parties must 'be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment,' which can be satisfied when a party is aware 'material outside the pleadings is before the court.'" *Snyder v. Md. Dept. of Transportation,* 2022 WL 980395, at *4 (quoting *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985)). Second, the parties must first "be afforded a reasonable opportunity for discovery." *Gay*, 761 F.2d at 177. However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Interest Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).

The present case meets both requirements. First, Singleton had adequate notice that the Motion may be treated as a motion for summary judgment. *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260 (4th Cir. 1998) (explaining that "[b]ased upon the caption alone, [the plaintiff] was on notice that this motion might be treated as one for summary judgment"). Second, Singleton does not suggest or assert that additional discovery is necessary, and did not submit a Rule 56(d) affidavit. *Harrods Ltd.*, 302 F.3d at 244 (explaining that "[i]f a party believes that more discovery is necessary for it to demonstrate a genuine issue of material fact, the proper course is to file a Rule 56(f) affidavit stating 'that it could not properly oppose a motion for summary judgment without a chance to conduct discovery.'") (quoting *Evans*, 80 F.3d at 961); *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995) (explaining that the failure to file an affidavit indicating a need for discovery "is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate."). Accordingly, the Court will treat the Motion as one for summary judgment.

## III. DISCUSSION

**Exhaustion of Administrative Remedies**

Defendants assert that Singleton has failed to avail himself of any administrative remedies prior to filing his complaint in this Court. If Singleton's claim has not been properly presented through the administrative remedy procedure, it must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e. The PLRA provides in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. App'x. 253 (4th Cir. 2004).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant. *See Jones v. Bock*, 549 U.S. 199, 215-16 (2007); *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017). Nevertheless, a claim that has not been exhausted may not be considered by this Court. *See Bock*, 549 U.S. at 220. In other words, exhaustion is mandatory. *Ross v. Blake*, 578 U.S. 632, 639 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Id.* (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'… normally creates an obligation impervious to judicial discretion")).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725, 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he…PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative

remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford*, 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). But the Court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). In *Ross v. Blake*, 578 U.S. 632 (2016), the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." *Id*. at 635. In particular, it rejected a "special circumstances" exception to the exhaustion requirement. *Id*. But it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id*. at 636. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette,* 517 F.3d 717, 725 (4th Cir. 2008), *see also Younger v. Crowder*, 79 F.4th 373, 380 (4th Cir. 2023) (plaintiff did not fail to exhaust administrative remedies where none was available to him due to ongoing IID investigation).

As the Supreme Court held in *Ross*, an administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" 578 U.S. at 642 (quoting *Booth*, 532 U.S. at 738). Thus, an inmate must complete the prison's internal appeals process, if possible, before bringing suit. *See Chase*, 286 F. Supp. 2d at 529-30. As a prisoner, plaintiff is subject to the strict requirements of the exhaustion provisions. *See Porter v. Nussle*, 534 U.S. at 528 (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct). Exhaustion is also required even though

the relief sought is not attainable through resort to the administrative remedy procedure. *See Booth*, 532 U.S. at 741.

The *Ross* Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." 578 U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 643-44. The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

Here, Defendants have offered verified, admissible evidence that Singleton has not availed himself of the available and required administrative remedies prior to filing his complaint with this Court. As noted, Singleton has not opposed Defendants' Motion; and therefore, concedes the arguments set forth therein and fails to generate a triable fact. Singleton may not pursue a judicial remedy without first making an attempt at resolving his complaint administratively. In sum, there is no genuine dispute of material fact that Singleton failed to exhaust administrative remedies rendering Defendants entitled to judgment as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion will be granted and summary judgment will be entered for Defendants and against Singleton. A separate order follows.

August 25, 2026

/S/

Julie R. Rubin
United States District Judge